14 CV 4084 (LTS)(JLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ERICA NOONAN,

                          Plaintiff,

          - against -

THE CITY OF NEW YORK, et. al.,

                          Defendants.

-------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. RULE CIV. P. 12(b)(6)


**DRUMMOND & SQUILLACE, PLLC**
*Attorneys for Plaintiff*
**175-61 Hillside Avenue, Suite 205**
**Jamaica, New York 11432**
**(718) 298-5050**

## Table of Contents

**Page**

Preliminary Statement……………………………………………….. 1

Factual and General Allegations…………………………………… 2

Standard For Motion To Dismiss Pursuant To Federal Rule Of
Civil Procedure 12(b)………………………………………………... 13

Argument……………………………………………………………... 14

I.     Plaintiff Sufficiently Pleads Municipality Liability, Federal
and State, Against Defendant The City of New York……….. 14

Conclusion………………………………………………………….. 25

# Table of Authorities

| Cases | Page |
|---|---|
| Adickes v. S.H. Kress,<br>398 US 144 (1970)………………………………………………………….. | 15 |
| Adorno v. Correctional Services Corp.,<br>312 FSupp2d 505 (SDNY 2004)…………………………………………. | 23 |
| Bell Atlantic Corp. v. Twombly,<br>550 US 544 (2007)………………………………………………………….. | 13, 14, 15 |
| Board of County of Commissioners of Bryan County Oklahoma v. Brown,<br>520 US 397 (1997)…………………………..………………………………. | 16, 17 |
| Butler v. South Glens Falls Central School District,<br>106 FSupp2d 414 (2000)………………………………………………… | 19 |
| Canton v. Harris,<br>489 US 378 (1989)……………………………………………………….. | *passim* |
| Doe v. City of New York,<br>09 CV 9895 (SDNY 2013)……………………………………………… | 21 |
| Ehrens v. Lutheran Church,<br>385 F3d 232 (2nd Cir. 2004)…………………………………………… | 24 |
| Fernandez v. Chertoff,<br>471 F3d 45 (2nd Cir. 2006)……………………………..…………………… | 14, 15 |
| Frazier v. Coughlin,<br>850 F2d 129 (2nd Cir. 1988)…………………………………….…… | 13, 14, 15 |
| Hernandez v. Keane,<br>341 F3d 137 (2nd Cir. 2003)……………..……………………………….. | 19, 20 |
| Johnson v. Newburgh Enlarged School District,<br>288 F3d 478 (2nd Cir. 2002)………………………………………… | 19 |
| J.S., et.al. v. Attica Central Schools,<br>386 F3d 107 (2nd Cir. 2004)…………………………………………….. | 13 |
| Massey v. Starbucks Corp.,<br>03 CV 7279 (SDNY 2004)…………………………………………… | 22 |

Monell v. New York City Dep't. of Social Services,
436 US 658 (1978)……………………………………………………….....  15

Murray v. Connetquot Cent. Sch. Dist., et.al.,
2002 US App. LEXIS 26137 (2nd Cir. 2002)………………………………  13

N.X. v. Cabrini Medical Center,
97 NY2d 247 (2002)…………………………………………………………….  22, 23

P.C. v. McLaughlin,
913 F2d 1033 (2nd Cir. 1990)…………………………………………….....  19

Phelps v. Kapnolas,
308 F3d 180 (2nd Cir. 2002)……………………………………………....  13, 14

Pizzuto v. County of Nassau,
239 FSupp2d 301 (EDNY 2003)……………………………………….....  23

R.B. v. Board of Education of the City of New York, et al.,
99 F. Supp.2d 411, 415 (SDNY 2000)…………………………………….  14

Ricciuti v. New York City Transit Authority,
941 F2d 119 (2nd Cir. 1991)……………………………………………….  *passim*

Richardson v. Goord,
347 F3d 431 (2nd Cir. 2003)…………………………………………….  19

Riviello v. Waldron,
47 NY2d 297 (1979)…………………………………………………….  23

Scott v. Abate,
1995 WL 591306, *8 (EDNY 1995)……………………………………....  19

SJB v. The New York City Department of Education,
2004 U.S. Dist. LEXIS 13227…………………………………………....  23, 25

Turner v. County of Suffolk,
955 F.Supp.175, 176 (EDNY 1997)……………………………………….  14

Walker v. City of New York,
974 F2d 293 (2nd Cir. 1992)……………………………………………....  *passim*

**Other:**
Fed. R. Civ. P. 8………………………………………………………….  14, 15, 22

Fed. R. Civ. P. 12(b)………………………………………………….. 22

42 USC §1983…………………………………………………………….. 15

## PRELIMINARY STATEMENT

This is an action seeking compensation and damages pursuant to 42 U.S.C. §§ 1983, 1986, 1988, the Eighth and Fourteenth Amendment to the United States Constitution and, the Constitution and laws of the State of New York as well as for claims of tortuous acts, conduct and deliberate indifference of the Defendants in that they intentionally, maliciously, recklessly and with deliberate indifference to human life, each acting in concert with the other and each acting under the color of the law, violated Plaintiff's rights herein by wrongful and unlawful conduct including, but not limited to: unlawful use of excessive force, negligent hiring, negligent retention, negligent training, assault, battery, false imprisonment, sexual assault, sexual battery, sexual misconduct, harassment, sexual harassment, rape, defamation, slander, libel, false arrest, false/malicious prosecution, abuse of authority, harassment, deviation and/or gross deviation from proper procedures, malice, recklessness, carelessness, negligence, negligent hiring, negligent training, negligent retention, negligent supervision, failure to intercede/stop/prevent, negligent/failure to discipline, intentional and/or negligent infliction of emotional distress, violation of civil rights, intentional and/or negligent infliction of cruel and unusual punishment, deprive citizens of their safety, liberty, civil rights and their right to be free from false arrest, false imprisonment, false prosecution, assault, battery, sexual assault, sexual battery, rape, abuse of position/employment, title, rank and shield, *respondeat superior,* punitive damages and further related claims.

It is significant to note that, contrary to Defendants' footnote 1 of their Memorandum of Law, Defendant Becker was properly served, has not appeared in this action and, as stated in their moving papers, the Office of Corporation Counsel is not appearing/moving on his behalf. See Declaration of JoAnn Squillace, Esq. at Exhibit "B", copy of Affidavit of

Service of service upon Defendant Becker. It is further important to note that Defendants concede that Plaintiff's claims against the City of New York for false arrest, false imprisonment, false prosecution, intentional and negligent infliction of emotional distress are sufficiently pleaded and, as such, they do not seek dismissal for same herein nor do they seek dismissal of any causes of action as against Defendant Becker. As such, the within opposition will not address those claims. Lastly, it is significant to note that, to date, [n]o discovery has been conducted in this matter.

## FACTUAL AND GENERAL ALLEGATIONS

Plaintiff incorporates by reference herein all of the Factual and General Allegations pleaded in Plaintiff's Complaint and the Exhibits attached thereto and, for purposes of Plaintiff's opposition herein, Plaintiff sets forth below the relevant pleaded facts/ allegations:

1.     On or about March 11, 2013, while Plaintiff was lawfully inside her vehicle lawfully travelling on a public roadway, Defendant Becker and "John Does", acting under the color of law, without a warrant and without probable cause, unlawfully and forcibly stopped, detained, arrested and imprisoned Plaintiff. See Declaration of JoAnn Squillace, Esq. at Exhibit "A", copy of Plaintiff's Complaint. When Defendant Becker detained Plaintiff, he handcuffed her and placed her under arrest telling her that she looked prettier in person than she did in her car and, as Plaintiff started to cry, he said: "Don't worry, I got you". While placing Plaintiff in the back seat of his squad/patrol car, he put his hands on her breast, cupping/touching her left breast and ignored Plaintiff's demand that he not touch her in such a fashion. While Defendants Becker and "John Does" were processing the Plaintiff, Becker took Plaintiff to the precinct bathroom, forced her to keep the bathroom door open while she

2

used same and watched/looked at Plaintiff as she used said bathroom. While in the course of processing Plaintiff's arrest and fingerprinting her, he told Plaintiff not to worry about losing her job with the City because he will make sure she did not lose same and that, as the main officer on her case, he would take care of it. While he held Plaintiff in the precinct holding room/cell, he repeatedly told/said to Plaintiff that she could not be all Caucasian because he said she has: "...an ass like a Hispanic or black woman." While acting under color of law in uniform and conducting the arrest processing of Plaintiff, Defendant Becker video recorded Plaintiff, her body, her lower body and her buttocks while she was being processed and zoomed in the recording on her buttocks; a recording that he admitted to doing and a video that it is believed was confiscated by/turned over to NYPD's Internal Affairs Bureau/Bronx County District Attorney's Office. Before transporting Plaintiff to Central Booking, he took Plaintiff's pen out of her jacket, which bore the name/address of the school where Plaintiff worked, acknowledged that he knew where she worked, wrote down his personal telephone number on a piece of paper and gave same to Plaintiff telling her: "...Call me. Like I told you before, I can help you out. I will speak to the district attorney for you." Defendant Becker remained with Plaintiff at Central Booking where he emphasized to her that he was the key person who could "make or break" her going to jail so she should call him. See id.

2. On or about March 11, 2013 to March 12, 2013, Plaintiff was charged with Driving While Intoxicated ("DWI") and related charges - Plaintiff's first arrest/contact with the criminal justice system. See id. at Exhibit "B", copy of criminal court complaint. Upon advice of her criminal defense attorney, Plaintiff engaged in text message communication with Defendant Becker from on or about March 14, 2013 to on or about March 22, 2013.

3

Defendant Becker, acting under color of law and within the scope, power, trust and authority of/with his employment as a New York City Police Officer, during the course of these text messages, repeatedly asked Plaintiff out and reasserted his position as the arresting officer on her case who could help her and "talk to the DA" about the charges against her. See id. at Exhibit "C", copies of text messages by/with Defendant Becker. On March 14, 2013, Defendant Becker texted Plaintiff to call him and when she did, Defendant Becker told Plaintiff that he was going to talk to the district attorney for her. He further asked her to text him her license number so he could check to see if her license was suspended, he confirmed that her license was not suspended and continued to persist on her going out with him. On March 16, 2013, Defendant Becker, via text message, told Plaintiff: "I'm going to talk to the district att on Monday... Don't worry I got u"..."Text me ur lawyers name.. I will pick u up and ur license isn't suspended yet I check"..."...I just got off the phone with ed macarin, he's one of the director for the board of ed. He's going to look into for me on Monday but he said it's impossible to get fired from ur job for first time offense...I'm trying all my resources for u. I was going to call u with him on the phone but he didn't want to talk on the job phone. Plus I'm going to speak to the attorney on Monday... All of this talking now I seriously need to go out". On March 19, 2013, Defendant Becker, via text message, told Plaintiff: "...Do u have a lot of bills...meaning if u don't get paid for a month do u have a lot of bills to pay...Gotcha. Well I will help u out...Have no fear carlito is here!!!...I got u so stop tripping...'m making u up a special shield for ur wallet tomorrow...It's a mini shield u carry on U...like the shield on my shirt but smaller..." On March 21, 2013, Defendant Becker, via text message, told Plaintiff: "Do u have plans tomorrow?...What time is court?...I was

4

thinking after court we go out to eat..." On March 22, 2013, Defendant Becker, via text message, told Plaintiff: "Do you want me to meet you at the court...Do u want me to pick u up and give u a ride...Plus we can get lunch and I will take u to work..." In addition, Defendant Becker repeatedly called Plaintiff during which he told her that he would talk to the district attorney to get the case dropped as he is the lead officer on the case and has the ability, power and authority within the scope of his employment to make the charges go away. See id.

3.     Upon advice of her criminal defense attorney, Plaintiff met with Defendant Becker on or about March 24, 2013 to discuss his promises to speak to the district attorney to get her case dropped. Defendant Becker took her to a restaurant and when she told him she wanted to go home, he, acting under color of law and within the scope, power, trust and authority of/with his employment as a New York City Police Officer, told her: "Let's go to another spot...we never got to really discuss how I can help you with this situation". Plaintiff felt obligated, forced, coerced and/or under duress to go with Defendant Becker. He then took Plaintiff to a lounge and while there he told Plaintiff, in response to Plaintiff's inquiry as to how he was going to help her with her case, to: "Give it a little time and I will let you know exactly how." While there, Plaintiff went to the bathroom as she began to feel groggy and heavy and when she returned and sat back at the table, her eyes felt heavy and she began to go in and out of consciousness/sleep.     While going in and out of consciousness/sleep, Plaintiff awoke to realize that Defendant Becker was putting her in his car and rested her head against the window; then she woke to flashing lights and she saw some sort of bridge; then she woke to Defendant Becker taking her out of his car, having her

5

feet on the ground/wet grass and seeing a house which she later learned was his house. At no time did Plaintiff permit, authorize, consent to the foregoing. Plaintiff then woke to the sensation of heavy pressure on top of her, seeing the side of Defendant Becker's face and her trying to push Defendant Becker off of her but to no avail. At no time did Plaintiff permit, authorize or consent to the foregoing. See id.

4. On or about the morning of March 25, 3013, Plaintiff awoke gasping for air in Defendant Becker's house and, in particular, in Defendant Becker's bed. Plaintiff could only open one eye as her left eye was swollen shut and bruised to the point where she could not see out of same. See id at Exhibit "D", copy of picture of Plaintiff's face/left eye. At no point did Plaintiff authorize, permit and/or consent to the foregoing. Plaintiff found Defendant Becker sitting in his living room watching television and asked what happened to her to which he replied: "You fell." Plaintiff asked him why instead he took her to his home and, in response he said: "I didn't know what to do...You fell. You fell like two times...You fell over here, you fell over there...Somebody had to help me...You fell." When Plaintiff returned home she called the police to report Defendant Becker and when the police arrived, she reported to them the events of the night before including, but not limited to: that she had been out the night before with Defendant Becker because he insisted on meeting with her to assist in dismissing her criminal case, that he was her arresting officer in her criminal case and that she woke up in his house with her left eye in a swollen shut, with no eyelashes, was in a black and blue/ purple and red/bruised condition. Once the police heard that it was a fellow police officer involved, the female officer who responded told Plaintiff that she was still probation and wanted nothing to do with Plaintiff's complaint against Defendant Becker.

6

Said female police officer called over her supervisor, a New York City Police Department Sergeant who was also not cooperative, understanding and/or sympathetic to Plaintiff. Given the foregoing, Plaintiff instead decided to go to the hospital to report the incident and to be medically examined. See id.

5. The City Of New York/NYPD were negligent by failing to and/or inadequately hiring, retaining, supervising, controlling, disciplining and/or training their employees/agents/officers, specifically Defendant Becker and "John Does" each acting in concert with the other and each acting under the color of law and within the scope of their employment with, power, trust, position and authority as NYPD officers; were negligent in failing to prevent, intercede and/or stop the aforementioned NYPD officers including Defendant Becker from causing Plaintiff to be injured/damaged herein and in failing to intercede, prevent and/or stop said police officers including Defendant Becker from abusing their positions of trust, power, influence and authority as NYPD officers over Plaintiff to then cause her to be injured/damaged herein. The City of New York and NYPD had/have policy, rules, regulations, codes, custom, practice, guidelines that prohibit their police officers from having personal contact with the Defendants and/or the individuals they arrest so as to avoid an abuse of their power, trust and authority as NYPD officers to improperly, wrongfully and/or unlawfully gain influence, power, access and or control over a Defendant and/or person they have arrested to the officers' personal benefit and/or gratification including, but not limited to: sexual gratification. Defendant Becker's actions, conduct, statements and/or omissions violated the City of New York's and/or NYPD's rules, regulations, codes, guidelines, practice, custom and/or policy about personal contact with a

7

Defendant/arrestee and/or abuse of their power/trust/authority to gain access, contact, control, power and/or influence over them for the officer's personal gratification including, but not limited to: sexual gratification. See id.

6. Prior to March 11, 2013 and continuing to on or about May 28, 2014, the City of New York/NYPD, through their official policy-makers, developed, created, facilitated, encouraged, enabled and/or maintained policies, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens like Plaintiff which caused and/or contributed to the violation of Plaintiff's State and Federal Constitutional Rights complained of herein. It was the policy, practice and/or custom of the City of New York/NYPD to inadequately and/or improperly investigate the complaints of abuse of authority, abuse of power, abuse of trust, false arrest, false imprisonment, unlawful stop and detention, assault, battery, excessive force, sexual assault/battery, sexual misconduct, official misconduct, failure to provide or cause to be provided medical care/treatment. Instead, acts of extreme violence, assault, battery, misconduct, harassment, sexual harassment, excessive force, sexual assault/battery, sexual misconduct, false arrest, false imprisonment, unlawful stop and detention and denial/refusal to provide or cause to be provided medical care/treatment exceeding that of human decency and the cruel and inhumane treatment of citizens/arrestees like Plaintiff in violation of the State and Federal Constitution were tolerated, encouraged, facilitated, uncorrected and/or unpunished by the City of New York/NYPD. Defendants have substantially failed to investigate and intentionally, and with deliberate indifference, failed to discipline police officers including Defendant Becker who violated the State and Federal Constitutional Rights of citizens/arrestees like Plaintiff.

8

It was the policy, practice and/or custom of the City of New York/NYPD to inadequately and/or improperly screen and hire police officers who are known, or with reasonable diligence should be known, to possess violent propensity, the propensity to commit official misconduct, the propensity to abuse their power, position, trust and/or authority as a New York City Police Officer, the propensity to falsely arrest citizens, the propensity to unlawfully stop and detain citizens, the propensity to falsely/hold/detain/hold against their will/imprison citizens, the propensity to falsely criminally charge and prosecute citizens, the propensity to assault/batter/sexually assault/sexually batter/rape citizens, the propensity to deny/refuse/fail to provide or cause to be provided medical care/treatment for citizens that they injure, the propensity to violate the State and Constitutional Rights of citizens/arrestees, the propensity to engage in excessive punishment/excessive force against citizens/arrestees, the propensity to ignore the medical needs of those they have injured, the propensity to subject citizens/arrestees to cruel and inhumane punishment/ excessive force, the propensity to harass/sexually harass while acting under color of law. Defendants have substantially failed to screen and reject such police officers including Defendant Becker herein. See id.

7. It was the policy, practice and/or custom of the City of New York/NYPD to inadequately and improperly train and supervise police officers like Defendant Becker herein who are known, or with reasonable diligence should be known, to be actively engaged in misconduct/violence/unlawful conduct by, among other actions and/or omissions, failing to investigate and punish improper/unlawful conduct of police officers; thereby failing to discourage constitutional violations on the part of their officers, as those visited upon

9

Plaintiff. The City of New York/NYPD have been on notice for years that harassment, assault, battery, official misconduct, abuse of power, abuse of trust, abuse of authority, use of excessive force, sexual assault/battery, sexual misconduct, failure to provide or cause to be provided medical care and/or violations of citizens'/arrestees' State and Federal Constitutional Rights are widespread prior to the wrong that was visited upon the Plaintiff and that particular reforms need to be implemented. It was the policy, practice and/or custom of the City of New York/NYPD to inadequately and/or improperly screen, hire, retain, train, supervise, manage, control, oversee and/or discipline their officers including Defendants Becker and "John Does"; thereby failing to discourage State and Federal Constitutional violations on the part of their officers such as those visited upon Plaintiff. The City of New York/NYPD, as a matter of policy, custom and/or practice have, with deliberate indifference, failed to adequately/properly screen for hiring and retention and failed to discipline, train or otherwise supervise officers concerning the rights of citizens/arrestees such as Plaintiff, thereby causing Defendants Becker and "John Does" to engage in the unlawful actions, conduct and/or omissions against Plaintiff. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens/arrestees like Plaintiff and the need for supplemental or different training, discipline, policies, practices and/or customs of the City of New York/NYPD caused their officers, including Defendants Becker and "John Does", to believe that they can violate the rights of citizens/arrestees like Plaintiff; thereby foreseeably allowing officers to violate the State and Federal Constitutional rights of citizens/arrestees. As a direct and proximate result of the Defendants' deliberate indifference, Defendants violated Plaintiff's State and Federal Constitutional Rights causing

10

her injuries herein. See id.

8.     Defendants had a duty to supervise, manage, control, oversee and/or police the conduct/actions of each and every other Defendant and had a responsibility to oversee the actions/conduct of each other. The City of New York/NYPD are responsible for the hiring, training, instructing, supervising, managing, controlling, overseeing and/or disciplining of each and every one of their officers including Defendants Becker and "John Does" herein. Defendants knew, and/or in the exercise of due diligence and/or their duty, would have known that the conduct/actions/omissions of Defendants Becker and "John Does" were reasonably foreseeable and/or reasonably likely to occur.    Defendants failed to take preventive and/or remedial measures to guard against the unlawful, intentional, negligent, reckless, egregious and/or malicious actions, conduct and/or omissions committed against Plaintiff thereby causing the Plaintiff's injuries.    Had Defendants taken appropriate action and/or exercised their duty in a reasonable and not in a negligent manner, the violation of Plaintiff's constitutional rights would not have occurred and their failure to, and/or improperly/inadequately screening, supervising, training, managing, controlling, overseeing and/or disciplining Defendants Becker and "John Does", directly and proximately caused Plaintiff's injuries herein. See id.

9.     Defendants had knowledge and/or information that they did not have/possess the justification, authority and/or permission to unlawfully and forcibly stop, detain, hold, hold against her will, false arrest, book, process, imprison, assault, hit, strike, batter, sexually assault, sexually batter, harass, sexually harass, rape and/or commit sexual misconduct against her and then fail to provide or cause to be provided medical care/treatment for the

11

injuries she sustained. Defendants each individually and collectively, had the power and authority to prevent the others individually and/or collectively from engaging in the aforementioned actions, conduct and/or omissions against the Plaintiff and each Defendant, individually and acting in concert with the other, willfully, intentionally and/or negligently neglected and/or refused to prevent the other from engaging in the aforementioned acts/conduct/omissions against Plaintiff herein. By their conduct on or about March 11, 2013 continuing to on or about May 28, 2014, under color of state law, Defendants each individually and collectively, had opportunities to intercede on behalf of Plaintiff to prevent the unreasonable and excessive, cruel and inhumane treatment that Plaintiff suffered and to prevent the other violations of the State and Federal Constitutional Rights of the Plaintiff but, due to Defendants' intentional conduct and/or deliberate indifference, Defendants declined or refused to do so. The Defendants' willful and deliberate failure to act when they each had a duty to do so was the actual, direct and/or proximate cause of the injuries and damages Plaintiff suffered and continues to suffer herein. See id.

      10.    Defendants owed Plaintiff a duty to be free from unlawful assault, battery, sexual assault, sexual battery, rape, sexual misconduct, false imprisonment, false arrest, use of excessive force, infliction of emotional distress and/or physical injury. As a result of the foregoing unlawful conduct of the Defendants, Defendants breached the duty they owed to Plaintiff which directly/proximately caused Plaintiff's injuries. The City of New York/NYPD breached their duty and are negligent in that they failed their duty to supervise, manage, oversee, maintain, control and/or train their employees, servants, officers, police officers and/or agents, including Defendants Becker and "John Does" so that they would be

12

aware that it is unlawful to unlawfully and forcibly stop, detain, hold against her will, falsely arrest, book, process, imprison, assault, hit, strike, batter, sexually assault, sexually batter, harass, sexually harass, raped, commit sexual misconduct against her, fail to provide or cause to be provided medical care/treatment for her injuries and to otherwise abuse their position of power, trust and authority as a NYPD officer for personal gain, benefit or gratification. The City of New York's/NYPD's breach of duty/negligence was a direct and proximate cause of the injuries suffered by the Plaintiff. The failure of the City of New York/NYPD to actually, properly and/or adequately screen, supervise, train, manage, control, oversee and/or discipline Defendants Becker and "John Does" caused injury to the Plaintiff and deprived her of her constitutional rights including the right to be free from excessive and unreasonable force, the right to be free from cruel and unusual punishment, the right to equal protection under the law and the right to due process. See id.

## STANDARD FOR MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b).

This Court should deny Defendants' motions to dismiss because Plaintiff sets forth sufficient facts to support her claims which would entitle her to relief. Pursuant to Fed. R. Civ. P. 12(b)(6), a Court determining a motion to dismiss is obligated to accept as true the factual obligations in the complaint and to view them in the light most favorable to the Plaintiff and any such motion is only to be granted where "it appears beyond doubt that the plaintiff can prove [n]o set of facts in support of his or her claim which would entitle him or her to relief. See Bell Atlantic Corp. v. Twombly, 550 US 544 (2007) (standard for complaint is flexible plausibility not heightened fact pleading); J.S., et al. v. Attica Central Schools, 386 F.3d 107 (2nd Cir. 2004); Murray v. Connetquot Cent. Sch. Dist., et.al., 2002

13

US App. LEXIS 26137 (2nd Cir. 2002); Phelps v. Kapnolas, 308 F3d 180 (2nd Cir. 2002); Walker v. City of New York, 974 F2d 293 (2nd Cir. 1992); Ricciuti v. New York City Transit Authority, 941 F2d 119 (2nd Cir. 1991); Frazier v. Coughlin, 850 F2d 129 (2nd Cir. 1988). Here, Plaintiff sufficiently pleads plausible facts against Defendants surrounding the specific acts/conduct by Defendant Becker who was acting in the scope of his employment and in abuse of the power and authority given to him by the City of New York as a NYPD officer that were committed while he was conducting and furthering the City's/NYPD's business of arresting, booking, processing and charging citizens with crimes and offenses. See Exhibit "A". As Plaintiff is not required to offer proof or evidence at this stage and as she gives the Defendants the required fair notice of what her claims are and the grounds upon which they rest, this Court should deny Defendants' motion. See id.; R.B. v. Board of Education of the City of New York, et al., 99 F. Supp.2d 411 (SDNY 2000); Phelps v. Kapnolas, *supra;* Bell Atlantic Corp. v. Twombly, *supra;* Fernandez v. Chertoff, 471 F3d 45 (2nd Cir. 2006)(inquiry is not whether plaintiff will prevail but [o]nly whether plaintiff is entitled to offer evidence in support of claims); Walker v. City of New York, *supra;* Ricciuti v. New York City Transit Authority, *supra;* Frazier v. Coughlin, *supra;* Turner v. County of Suffolk, 955 F.Supp. 175, 176 (EDNY 1997) (complaint be simple, direct and concise to give adversary fair notice of claims alleged); See FRCP 8.

## ARGUMENT

### I. PLAINTIFF SUFFICIENTLY PLEADS MUNICIPALITY LIABILITY, FEDERAL AND STATE, AGAINST DEFENDANT THE CITY OF NEW YORK.

Plaintiff sufficiently pleads causes of action against the City of New York for

violations of Section 1983, violation of Plaintiff's Eighth and Fourteenth Amendment rights as well as violation of her State rights, so as to entitle her to offer proof in support of such claims herein. Here, Defendants conveniently ignore the stage of the current proceedings, to wit: the pleadings stage, where Plaintiff is under [n]o obligation to prove, show or produce any evidence to establish her claims and need not prove or give evidence of deliberate indifference – she need only plead sufficiently plausible facts so as to entitle her to proceed herein to discovery and to offer evidence at trial in support of her claims. See FRCP 8; Bell Atlantic Corp. v. Twombly, *supra;* Fernandez v. Chertoff, *supra;* Walker v. City of New York, *supra;* Ricciuti v. New York City Transit Authority, *supra;* Frazier v. Coughlin, *supra.* Here, [n]owhere in Defendants' moving papers do they assert that they do not know what the claims are against them or that they are confused as to what claims are against the City and what claims are against the individual Defendants herein. Further, it is well settled that the City of New York, as a municipality, is a "person" within the meaning of §1983 for subjecting or causing to be subjected any citizen of the United States, such as Plaintiff, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws and shall be liable to such injured party like Plaintiff for same. See 42 USC §1983; Monell v. New York City Dep't of Social Servs., 436 US 658 (1978). As such, Defendant the City of New York is not immune from liability. See id. It is further well settled that, an act performed pursuant to a custom that has not been formally approved by an appropriate decision maker, may subject the City to liability on the theory that the relevant practice is so widespread as to have the force of law. See Monell, *supra* at 690-691; Adickes v. S.H. Kress & Co., 398 US 144 (1970).

15

Moreover, in Canton v. Harris, a jury [t]rial case in which the plaintiff claimed that inadequate training of supervisors at a city jail led to a deprivation of a detainee's constitutional rights, the Supreme Court held that a municipality can be held liable where it demonstrated or exercised "deliberate indifference" to a practice or action by a municipal employee that caused and/or led to injury of a citizen. See 489 US 378, 387-389 (1989). The Supreme Court held that "inadequate training" of municipal employees can be the basis for municipality liability pursuant to §1983. See id. If training does not prevent constitutional violations, then municipal decision makers may be put on notice that a new program is called for and a municipality's continued adherence to an approach that it knows fails to prevent tortuous acts/conduct by its employees may establish the "conscious disregard" for the consequences of their actions, to wit: the "deliberate indifference" that subjects the municipality to liability. Board of County of Commissioners of Bryan County, Oklahoma v. Brown, et al., 520 US 397 (1997) *citing* Canton, *supra* at 388, 390 (municipal deliberate indifference as to known or obvious consequences subjects municipality to §1983 liability). As in the within case, the police in exercising their discretion so often violate citizens' constitutional rights that the need for further training was plainly obvious to the municipality and/or its policy makers but, despite same, they remain deliberately indifferent to such need. See 489 US at 390; Board of County of Commissioners of Bryan County, *supra* at 407 (municipality liability for failure to train where shown policymakers were aware of, but acquiesced in, pattern of constitutional violations).

Further, the existence of a pattern of tortuous conduct by inadequately trained municipal employees may tend to show that the lack of proper training, rather than a single

16

incident of negligent administration of such training, or "factors peculiar to the officer involved in a particular incident", is the "moving force" behind a plaintiff's injury. Canton, *supra* at 390-391. *A plaintiff may succeed at [t]rial with his/her failure to train claim even without a showing of a pattern of constitutional violations and where there is a risk of constitutional violations generally and not any one constitutional violation specifically.* See Board of County of Commissioners of Bryan County, *supra* at 409 *citing* Canton, *supra* at 390 (violation of federal rights highly predictable consequence of failure to equip law enforcement officers with tools to handle recurring situations; likelihood situation will reoccur and predictability that officer lacking tools to handle same will violate citizens' rights justify finding policymaker's decision not to train is actionable "deliberate indifference"). Where the need to take some action to control the agents of the municipality is so obvious and the inadequacy of existing practice so likely to result in violation of one's constitutional rights, then the municipality can be held to be "deliberately indifferent to the need" and liable under §1983. Canton, *supra* at 389-390 (toleration of subordinate's behavior establishes "policy-in practice" and municipality failing to train employees and evidencing deliberate indifference to rights of citizens is actionable municipality "policy or custom"). Even when the need to train or supervise would not be obvious to a stranger to the situation, a particular context may make the need for training or supervision so obvious that the municipality's failure to do so would constitute actionable deliberate indifference. See id. at 390 (when municipality knows employees will confront given situations, not rare or unforeseen, failure to train or supervise is actionable deliberate indifference under §1983).

Here, Plaintiff should be entitled to pursue discovery to offer evidence in support of

17

her claims that are sufficiently pleaded in her Complaint and it is submitted herein that, discovery will further provide evidence that: (1) the City and NYPD know to a "moral certainty" that their employees like Defendant Becker herein will confront situations in their employment as NYPD officers including situations where they are presented with opportunities to abuse their power and authority; abuse their power, authority, title, rank, position and shield of being a NYPD officer; commit official misconduct against citizens; commit unlawful conduct/official misconduct against detainees/arrestees/citizens including but not limited to excessive force, false arrest, false prosecution and false imprisonment and/or abuse of abuse of their power, authority, title, rank, position and shield of being a NYPD officer for their own personal gain/power/control/benefits/gratification including, but not limited to their own personal sexual gain/gratification and/or to the deprivation of the constitutional rights of citizens like Plaintiff herein including, but not limited to her right to be free from excessive force, false arrest, false prosecution, false imprisonment, assault, harassment, sexual assault, sexual harassment; (2) that the situation [e]ither presents the municipal employee with a difficult choice of the sort that training or supervision will make less difficult [o]r that there is a history of employees mishandling the situation and (3) that the wrong choice by the municipal employee will frequently cause the deprivation of a citizen's constitutional rights. See Canton, *supra*; Walker, *supra* (denying motion to dismiss and allowing Plaintiff to conduct discovery holding that if Plaintiff produces some evidence that municipality was aware of pattern/ history of unlawful conduct of its officers but failed to institute appropriate training or supervision, Plaintiff's claims survive even any motion for summary judgment).

18

Even if a municipality is reasonable in assuming that its employees have common sense to not commit certain acts and/or not to engage in conduct that would violate a citizen's constitutional rights, this does not immune a municipality, like the City of New York herein, from liability where there is a history, as is the case herein, of conduct rendering this assumption untenable thereby rendering the City's inaction, failure to train or supervise an actionable deliberate indifference under §1983. A choice may be "difficult" where, although the proper course is clear, the employee, just like Defendant Becker herein, has "powerful incentives to make the wrong choice". Walker, supra at 297. In Walker, the Second Circuit, in denying Defendants' motion to dismiss, correctly held that even though Walker did not expressly allege a history of police perjury (the misconduct/unlawful conduct in question), it did not appear "beyond doubt" that Walker could not prove his set of facts in support of his claim that would entitle him to relief and properly allowed Walker to pursue discovery in support of his claims. See id. at 297-298, 300 (reversing dismissal of claims) citing Ricciuti, supra. In the within matter, discovery may and Plaintiff submits will, reveal a pattern and/or history and the City/NYPD's failure to train and supervise its officers regarding the misconduct/unlawful conduct herein sufficient to turn any alleged reasonable reliance by the City/NYPD, that its officers like Becker possess and use common sense not to commit such misconduct, into actionable deliberate indifference. See id. at 301. Further, public officers are liable when their conduct, as in the within case, is a substantial factor in the denial of a protected liberty or property interest and when they displayed a mental state of deliberate indifference with respect to Plaintiff's rights. See P.C. v. McLaughlin, 913 F.2d 1033 (2nd Cir. 1990); Scott v. Abate, 1995 WL 591306, *8 (EDNY 1995). The Defendants'

19

motion should also be denied as the individually named Defendants, being sued in their official capacity, are not entitled to qualified immunity. See Butler v. South Glens Falls Central School District, 106 FSupp2d 414 (2000); Johnson v. Newburgh Enlarged School District, 288 F.3d 478 (2nd Cir. 2002)(no qualified immunity where reasonable person in defendant's position should know about appropriateness of conduct under federal law); Richardson v. Goord, 347 F.3d 431 (2nd Cir. 2003) *quoting* Hernandez v. Keane, 341 F.3d 137 (2nd Cir. 2003)(no qualified immunity where defendant personally involved in alleged constitutional violation.).

Defendants' motion should be dismissed because Plaintiff sufficiently pleads that the City of New York/NYPD know that their police officers will be presented with opportunities to abuse their power, authority, title, rank, shield, position and/or employment as NYPD officers, to abuse same to obtain personal gain or benefits, including the benefit of personal sexual gratification, and to abuse same to the deprivation of the Constitutional rights of citizens like Plaintiff herein that will likely and forseeably cause injury therefrom. Plaintiff has further sufficiently pleaded that there is a history, pattern and/or practice of the Defendants' police officers committing such unlawful conduct and abusing their power, authority, title, rank, shield, position and/or employment as NYPD officers, to abuse same to obtain personal gain or benefits including the benefit of personal sexual gratification, and, to abuse same to the deprivation of the Constitutional rights of citizens and that the Defendants failed to address, remedy and/or prevent same by failing in their training, supervising, screening, hiring, firing and/or retaining such officers regarding same. See Exhibit "A"; Walker, *supra;* Canton, *supra.*

20

Indeed, these are not rare or unforeseen events as Defendants themselves have conceded. In its moving papers, the City of New York acknowledges that it knows of the opportunities presented to their police officers to abuse their power, authority, title, rank, shield, position and/or employment as NYPD officers for their personal gain/benefits, including personal sexual gratification, that serve to deprive citizens like Plaintiff of their constitutional rights to be free from excessive force, assault, battery, sexual assault, sexual battery, harassment and sexual harassment as it cites to Doe v. City of New York, et.al. -- a case claiming such unlawful conduct that occurred **prior** to what happened to Plaintiff herein – thereby conceding notice on/by the City of New York of the history, problem, practice and/or pattern of such unlawful conduct by their police officers against citizens. See 09cv9895(SDNY 2013). As such, Defendants are not entitled to any defense of lack of notice as the underlying conduct giving rise to the Doe case cited above alone, which is not the only case against the City for such unlawful conduct of its police officers, arose and existed **prior to Plaintiff's unlawful arrest on March 11, 2013 and the subsequent unlawful acts committed against her thereafter.** Defendants have long known of this problem and their failure to address same with training, screening, re-training, firing, and/or any other remedial/preventive measure, constitutes the requisite deliberate indifference to the need to hold the City of New York liable herein. See Canton, *supra;* Walker, *supra.* Further, Defendants' reliance on Doe is misplaced as, with all due respect to "Doe" and her counsel, here Plaintiff, unlike "Doe", has plausibly pleaded sufficient facts, details, incidents and events and the required deliberate indifference, likelihood of misconduct and injury/deprivation of constitutional rights and causation of injury so as to entitle her to pursue

21

discovery and offer evidence in support of her instant claims. See Exhibit "A".

Here, the failure by the City/NYPD's officers to resist these opportunities will result in the deprivation of the constitutional rights of citizens and, indeed, such powerful incentives of personal sexual gratification, as in the within matter and the Doe matter, can make the choice of whether to commit or not commit the act a difficult one. See id; Walker, *supra*. Where powerful personal incentives throw common sense and logic out the window, the Defendants are fully aware of the long history/pattern/practice by their officers in making the wrong choices, mishandling the situations presented to them and/or committing such unlawful conduct to the deprivation of the constitutional rights of citizens like Plaintiff and know same misconduct will likely cause injury therefrom. See id; Canton, *supra*. As such, Defendants' motion should be denied. See id; Ricciuti, *supra;* FRCP 8; FRCP 12(b).

Further, as pleaded by Plaintiff, Defendant Becker was acting in the scope of his employment as a New York City police officer in committing these acts and acted in furtherance of Defendants' business, to wit: the business of arresting, booking, processing, charging, imprisoning individuals. See Massey v. Starbucks Corp., 03cv7279 (SDNY 2004); N.X. v. Cabrini Med. Ctr., 97 NY2d 247 (2002). The acts committed by Becker were concededly done while in uniform, while arresting, booking, processing, charging and imprisoning her and the subsequent acts were committed while in abuse of the scope of his employment, power and authority as a NYPD officer when he coerced her to meet him by promising her to speak to the District Attorney on her case to make the charges go away, to secure her job and license privileges and by promising to give her a shield like his. See Exhibit "A". Defendants cannot dispute that in furtherance of their business to arrest, book,

22

process, charge and imprison individuals, Defendant Becker has obligations as an officer to meet arrest quotas, which we are all aware that the City and NYPD have in place for their officers. Here, it is not just the ultimate injury of the sexual assault for which she seeks compensation and for which the City may be liable but, vicarious liability can attach for the tortuous acts of the repeated abuse of the power, authority, title, rank, shield, position and employment by Defendant Becker while acting on duty and in the course of being a NYPD officer that caused Plaintiff's injuries including that of the sexual assault and deprivation of her rights. See N.X. v. Cabrini Med. Ctr., *supra* (actions within scope of employment as to carry out duties [i]ncumbent upon employee is furthering employer's business).

It is well settled that the City need not have foreseen the exact act or manner of the Plaintiff's injuries as, where the element of general foreseeability exists, such being pleaded by Plaintiff herein, then even intentional torts have been found to fall within the scope of employment. See Adorno v. Correctional Services Corp., 312 FSupp2d 505 (SDNY 2004)(motion for summary judgment after discovery); Pizzuto v. County of Nassau, 239 FSupp2d 301 (EDNY 2003); Riviello v. Waldron, 47 NY2d 297 (1979). This determination is dependent on factual considerations that are questions for a **jury** and not one on a 12(b)(6) motion. See id. As pleaded by Plaintiff, some of the unlawful acts were committed while he was in uniform, while in the course of his employment and while furthering the Defendants' business and the other acts that were committed while out of uniform were in further abuse of his power and authority as a NYPD officer. If his acts were purely personal, then his furtherance of Defendants' business to make arrests would have ended at the initial stop of Plaintiff as he had no probable cause to stop or arrest her.

Defendants' motion should also be denied as Plaintiff has sufficiently pleaded her state claims of negligence, negligent hiring, retention and supervision. See Exhibit "A". Plaintiff sufficiently pleads that Defendants owe Plaintiff a duty of care, that they breached that duty and that said breach directly and proximately caused her injuries herein. See id. Indeed, it is undisputed that, as Plaintiff pleads, the City of New York/NYPD were the employers of Defendant Becker who is same Defendants' employee. Further, Plaintiff pleads that Defendants knew or should have known of Defendant Becker's propensity for misconduct, to wit: the abuse of his power, authority, title, rank, shield, position and/or employment as a NYPD officer, to abuse same to obtain personal gain or benefits, including the benefit of personal sexual gratification, and to abuse same to the deprivation of the Constitutional rights of citizens which caused Plaintiff's injury, and, Plaintiff pleads that same was committed while in the course and scope of his employment, to wit: "with the employer's chattels." See id. As such, this Court should deny Defendants' motion. See Ehrens v. Lutheran Church, 385 F3d 232 (2nd Cir. 2004). In addition, Defendants' reliance on Coffey v. City of New York is misplaced as that case was a motion for summary judgment after discovery was conducted and not a 12(b)(6) motion to dismiss the pleadings.

Defendants seek to obtain dismissal of the federal claims against the City on the assertion that Defendant Becker did not act within the scope of his employment and then assert that Defendant Becker acted within the scope of his employment in seeking to dismiss Plaintiff's state claims of negligence, negligent hiring, retention and supervision. Not only can Defendants not have it both ways, but the plausibly pleaded facts by Plaintiff herein demonstrate sufficient acts committed by Becker within the scope of his employment as a

NYPD officer to attach federal and state municipality liability against the City for deliberate indifference as well as plausible facts of the personal acts committed by Becker while off duty and out of uniform so as to attach municipality liability against the City for negligence, negligent hiring, retention and supervision. See Exhibit "A". Lastly, Defendants' reliance on Newton v. City of New York is misplaced herein as same case regarded a motion for summary judgment after discovery and not a 12(b)(6) motion on the pleadings. As such, Defendants' motion should be denied.

To the extent that Plaintiff's Complaint requires additional and/or more specific facts to plead any cause of action herein, Plaintiff respectfully requests leave to amend same.

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety and for such other and further relief as this Court deems just and proper.

Dated: September 26, 2014
      Jamaica, NY

                Respectfully submitted,

                JOANN SQUILLACE (JS 4217)
                DRUMMOND & SQUILLACE, PLLC
                Attorneys for Plaintiff
                ERICA NOONAN
                175-61 Hillside Avenue, Suite 205
                Jamaica, New York 11432
                (718) 298-5050

TO:    Office of Corporation Counsel
       100 Church Street
       New York, New York 10007
Attn:  ACC Elissa Jacobs, Esq.