UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ERICA NOONAN,

               Plaintiff,

  -v-                                                               No. 14CV4084-LTS-JLC

THE CITY OF NEW YORK, et al.,

               Defendants.
-------------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Erica Noonan ("Plaintiff") brings this action, pursuant to 42 U.S.C. §§ 1983 and 1986, against Defendants the City of New York ("the City"), the New York Police Department ("NYPD" and, collectively, "Moving Defendants"), and various individual defendants, alleging deprivation of her civil rights. Plaintiff has also asserted several corresponding state law claims. The City and the NYPD move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims against them.[1] The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. The Court has carefully considered the parties' submissions. For the following reasons, Moving Defendants' motion is granted in its entirety.

<u>BACKGROUND</u>

The following facts are alleged in the Complaint ("Compl.," Docket Entry No. 2) or drawn from documents annexed thereto. On March 11, 2013, Plaintiff was pulled over by Defendant Carlos Becker ("Becker"), an NYPD officer, while driving in Bronx County, New

---

[1] The named individual Defendant has not appeared in this action and this motion practice is not brought on his behalf.

York.  (Compl. ¶ 16.)  Becker placed Plaintiff under arrest and, as he placed her into his patrol car, allegedly touched her breast, despite her objections.  (Id. ¶ 18.)  Officer Becker then escorted Plaintiff to his precinct, where Plaintiff claims that he watched her as she used the bathroom, inappropriately commented on her appearance and "video recorded Plaintiff, her body, her lower body and her buttocks."  (Id. ¶¶ 19-21.)  Throughout the course of this interaction, Becker continually reassured Plaintiff that he was willing to assist her in resolving any charges that might eventually be brought against her and, to that end, provided Plaintiff with his personal cell phone number.  (Id. ¶¶ 20, 22-25.)  A criminal complaint was eventually filed against Plaintiff, charging her with driving while intoxicated.  (Id. ¶ 26, Exh. B.)  The complaint was later dismissed and sealed.  (Id. ¶ 90.)

At the urging of her criminal defense attorney, Plaintiff maintained contact with Becker while her criminal case was pending, and the two exchanged a series of text messages in which Becker expressed an interest in arranging an in-person meeting.  (Id. ¶¶ 28-30, Exh. C.)  Plaintiff eventually agreed to meet with Becker at a restaurant on the evening of March 24, 2013.  (Id. ¶¶ 40-43.)  After meeting at the restaurant, Plaintiff continued on to a bar with Becker, who assured her they would discuss her pending criminal case.  (Id. ¶¶ 44-45.)  Plaintiff alleges that at the bar she began to feel "groggy, her eyes felt heavy and she began to go in and out of consciousness."  (Id. ¶ 47.)  Plaintiff claims that Becker then put her into his car and took her to his home where, she alleges, Becker sexually assaulted her.  (Id. ¶ 48-52.)  Plaintiff awoke in Becker's bed on March 25, 2013, having sustained a bruised and swollen eye.  (Id. ¶ 53.)  Plaintiff reported these events to police that day, but claims that they were unreceptive to her complaints.  (Id. ¶¶ 58-59.)  She then went to the hospital for a medical examination.  (Id. ¶¶ 60-64.)  NYPD Internal Affairs officers responded to the hospital, where Plaintiff again recounted

what had occurred.  (See Compl. ¶¶ 65-66.)  Following a subsequent investigation, Becker was indicted for "Official Misconduct."  (Id. ¶¶ 68-69.)  The misconduct charges were eventually dismissed (id. ¶ 73), and Becker was never charged in relation to the alleged sexual assault, which he denies ever took place.  (See id. ¶¶ 73-74, 77.)

Plaintiff filed suit against the City and the NYPD pursuant to 42 U.S.C. §§ 1983 and 1986, asserting that the injuries she sustained were a direct product of the City's policies and customs.  (See Compl. ¶¶ 102-60.)  In her Complaint, Plaintiff alleges – in conclusory fashion – that the City maintained "policies, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens," as well as policies of "inadequately and/or improperly investigat[ing] the complaints of citizens."  (Id. ¶¶ 142-43.)  Plaintiff alleges that the City and the NYPD failed to properly screen, hire, train, and discipline police officers despite "having been on notice for years" that misconduct was "widespread prior to the wrong that was visited upon [her]."  (Id. ¶¶ 142-49.)  Plaintiff also asserts various state-law tort claims, including negligent hiring and supervision and vicarious liability under a theory of respondeat superior, as well as a claim for deprivation of her rights under the New York State Constitution.  (Id. ¶¶ 161-291.)

DISCUSSION

The City and the NYPD move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  In determining whether a plaintiff has set forth the "short and plain statement of the claim showing that [she] is entitled to relief" required by the Federal Rules (see Fed. R. Civ. P. 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial

plausibility" of the plaintiff's claims.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Such a showing "must be enough to raise a right to relief above the speculative level," requiring "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555 (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff's Claims Against the NYPD

As an agency of the City of New York, the NYPD is a non-suable entity.  See N.Y.C. Charter § 396 (2014) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency . . . ."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (noting that no claim may be brought directly against NYPD).  Therefore, Plaintiff cannot properly allege any claims directly against the NYPD.  Moving Defendants' motion is thus granted in its entirety with respect to the NYPD, and all claims asserted against the NYPD are dismissed.

Monell Liability (Causes of Action Six and Seven)

Plaintiff asserts that the City is liable for deprivation of her civil rights under 42

U.S.C. §§ 1983 and 1986.  (Compl. ¶¶ 141-56.)² A municipality may be held liable for depriving a citizen of her constitutional rights only when it has put in place a "policy or custom" that has led to that deprivation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("Monell"); see also Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) (explaining that, in addition to pointing to "a tort in violation of federal law committed by municipal actors," plaintiff must further show that "commission of the tort resulted from a custom or policy of the municipality.").  Furthermore, "[u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.  Monell does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy."  Askins, 727 F.3d at 253.  Plaintiff attempts to establish the City's Monell liability under three separate theories: (1) that the City failed to supervise its police officers; (2) that the City improperly screened and hired its police officers; and (3) that the City failed to train and discipline its police officers.  (Compl. ¶¶ 141-51.)  Plaintiff also claims that the City had knowledge of a conspiracy to deprive her of her constitutional rights, but neglected to prevent this deprivation.  (Id. ¶¶ 152-56.)  As set forth below, Plaintiff does not plead facts supporting the existence of any policy, custom, or practice which led to her injuries and thus fails to state a claim against the City under Section 1983 or

---

³ This claim is most explicitly laid out in Plaintiff's Seventh Cause of Action, labeled "Monel [sic] Claim." (Compl. ¶ 141-51.)  Plaintiff makes a similar claim in her Sixth Cause of Action, labeled "Supervisory Liability." (Id. ¶¶ 131-40.)  The Court notes that municipal liability under Section 1983 may only be established in the manner prescribed by Monell, and therefore deems the allegations in the Sixth Cause of Action duplicative of those in the Seventh Cause of Action.

Section 1986.

> *Failure to Supervise*

In order to successfully plead a claim of Monell liability for failure to supervise under Section 1983, a plaintiff must establish that "policymakers were knowingly and deliberately indifferent to the possibility that its police officers were wont to violate the constitutional rights of arrestees." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus, a plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious" and that "no meaningful attempt" to curb the unconstitutional conduct was made. Id. (internal quotation marks and citation omitted).

Here, Plaintiff does not plead a single fact indicating that the City was aware that its police officers were "wont" to commit sexual assaults, nor does Plaintiff point to a single instance of sexual assault committed by Becker – or any other police officer – beyond the bald assertion that such conduct has been ongoing "for years." (Compl. ¶ 146.) Without setting forth a factual basis for the City's knowledge of the alleged misconduct, Plaintiff cannot plausibly claim indifference to such misconduct, much less the City's failure to respond appropriately to it. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference") (overruled on other grounds); Lowery v. City of New York, No. 10CV7284-KBF, 2014 WL 2567104, at *6 & n.12 (S.D.N.Y. June 6, 2014) (collecting cases and noting that "boilerplate, conclusory allegations are insufficient to withstand dismissal."). Because Plaintiff pleads no specific facts in support of her conclusory assertion that "[i]t was the policy of the . . . City of New York . . . to inadequately

and improperly . . . supervise police officers" and to "improperly investigate the complaints of citizens," while "tolerat[ing], encourag[ing], [and] facilitat[ing]" police misconduct (Compl. ¶¶ 143-45), she fails to state a claim for municipal liability under a failure-to-supervise theory.

> *Failure to Train*

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). The "conscious disregard" of a risk posed by a municipality's actions may also be enough to trigger liability under this theory. See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997). For liability to attach, the municipality's failure to train, as implemented through an official policy, must be the "moving force behind plaintiff's injury." Id. at 407-08 (internal quotation marks and citation omitted).

A municipality is liable for a failure to train its employees where: (1) the municipality "knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or . . . there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992). This test embodies the principle that, absent facts indicating a pattern or history of tortious conduct, a stand-alone violation of constitutional rights can only satisfy this "deliberate indifference" standard where the violation was "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Brown, 520 U.S. at 409. The Second Circuit has made it clear that a plaintiff may not establish municipal

liability under a failure-to-train theory without "identify[ing] a specific deficiency in the city's training program and establish[ing] that [the] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am., 361 F.3d at 129-30 (quoting City of Canton, 489 U.S. at 391).

Plaintiff does not allege any facts tending to indicate that any aspect of the City's police training program led to the "highly predictable consequence" of constitutional violations being perpetrated by police officers.  Furthermore, Plaintiff pleads no facts indicating a pattern or history of officer misconduct.  Unless such a history can be demonstrated, the Second Circuit requires a showing that the alleged violation of rights was the product of a "difficult choice of the sort that training or supervision [would] make less difficult" and that, if made incorrectly, "[would] frequently cause the deprivation of a citizen's constitutional rights." Walker, 974 F.2d at 297-98.  The decision to commit a sexual assault – a blatantly criminal act – cannot reasonably be seen as posing the type of  "difficult choice" contemplated by the Second Circuit in  Walker.  Accord Doe v. City of New York, No. 09CV9895-SAS, 2013 WL 796014, at *4 (S.D.N.Y. Mar. 4, 2013) ("It goes without saying that a police officer is prohibited from sexually assaulting an intoxicated woman when responding to a 911 call.").  Because Plaintiff offers no facts that would support an inference that a history of police misconduct existed, nor any facts demonstrating that Officer Becker faced a "difficult choice" that ultimately led to the deprivation of her rights, Plaintiff has failed to establish the City's Monell liability on the basis of improper training.

*Failure to Screen and Improper Hiring*

Plaintiff also attempts to establish Monell liability under Section 1983 based on the City's alleged practice of improperly screening and hiring police officers, including Officer

Becker.  "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"  Brown, 520 U.S. at 411.  Liability turns on a finding that the police officer at issue "was highly likely to inflict the particular injury suffered by the plaintiff."  Id. at 412 (emphasis in original).

      Plaintiff has pleaded no facts that would support an inference that the City had reason to believe that Becker's background would predispose him to sexual misconduct, nor any facts indicating prior wrongdoing by Becker.  See id. ("The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong"); see also Cooper v. City of New York, No. 12CV8008-SAS, 2013 WL 5493011, at *7 (S.D.N.Y. Oct. 2, 2013) (dismissing Monell claim based in part on failure to properly screen police officers where complaint consisted of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (quoting Iqbal, 556 U.S. at 663)).  Plaintiff has thus failed to plead any of the requisite elements of a failure to screen or improper hiring theory of municipal liability.  In light of the foregoing, Plaintiff's Sixth and Seventh Causes of Action, asserting Monell liability, must be dismissed.

Failure to Prevent Civil Rights Violations Under Section 1986 (Eighth Cause of Action)

      Plaintiff claims that the City is liable under 42 U.S.C. § 1986 for having had knowledge of a conspiracy to deprive Plaintiff of her constitutional rights and for failing to prevent such a deprivation from taking place.  Section 1986 creates a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and

mentioned in [Section 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so do to, if such wrongful act be committed." 42 U.S.C.S. § 1986 (LexisNexis 2009 & Supp. 2014). In determining whether the City may be held liable under Section 1986, the Court must look to whether Plaintiff has properly set forth a Section 1985 claim, because the existence of an unlawful conspiracy and subsequent commission of a "wrongful act," as described in Section 1985, are necessary conditions precedent to a Section 1986 action. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 419 (2d Cir. 1999) ("[N]o § 1986 claim will lie where there is no valid § 1985 claim.") (citing Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)).

For the purposes of determining conspiratorial liability under Section 1985, municipalities are considered "persons" capable of conspiring to deprive others of civil rights. See Castilla v. City of New York, No. 09CV5446-SHS, 2012 WL 5510910, at *7 (S.D.N.Y. Nov. 14, 2012) (citing Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979)). Like a claim brought under Section 1983, "municipal liability under [Section] 198[5] must also be predicated on 'an official custom or policy.'" Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting Owens, 601 F.2d at 1247). If this "official custom or policy . . . stem[s] from or result[s] in a conspiracy implicating the [municipality] itself, a [Section] 1985 claim will lie." Owens, 601 F.2d at 1247. Thus, failing to sufficiently plead a policy, custom, or practice sufficient to state a Section 1985 claim is fatal to any claim under Section 1986. See Gagliardi, 18 F.3d at 194 (affirming dismissal of Section 1986 claim on basis that plaintiff "failed to state a claim for relief under section 1985").

Having already found that Plaintiff has failed to allege the existence of any sort of municipal policy or custom, the Court must reject Plaintiff's claim that the City, as a result of an

official policy or custom, failed to prevent a conspiracy to deprive Plaintiff of her constitutional rights. Moreover, Plaintiff fails to offer any facts in support of a Section 1985 claim, which is a prerequisite to establishing liability under Section 1986. Accordingly, Plaintiff's Eighth Cause of Action must be dismissed as against the City.

Plaintiff's Remaining Federal Claims (Causes of Action One Through Four and Nine)

Plaintiff asserts several other federal claims as against all Defendants in this action generally, including both the City and the NYPD (Causes of Action One through Four and Nine).[3] These include claims of excessive force (Cause of Action One) (Compl. ¶¶ 102-05), wrongful arrest and malicious prosecution (Cause of Action Three)[4] (see id. ¶¶ 110-15), and violations of Plaintiff's rights under various federal and state constitutional provisions (Causes of Action Two and Four) (id. ¶¶ 106-09, 116-26), all of which are purportedly asserted pursuant to Section 1983. Plaintiff's Ninth Cause of Action alleges that Defendants "declined or refused" to "intercede . . . and to prevent" Plaintiff's injuries, without providing any indication of what the legal basis for the claim might be. (See Compl. ¶ 158.)

As explained above, municipal liability only attaches when the plaintiff can demonstrate that the "execution of a government's policy or custom, whether made by its

---

[4] Plaintiff's Fifth Cause of Action (labeled "Conspiracy") makes allegations solely against the "individual Defendants," and does not name either the City or the NYPD. (See Compl. ¶¶ 128-29.) Therefore, the Court need not address this Cause of Action in resolving the instant motion.

[5] Plaintiff's Third Cause of Action is labeled "Caused to be Subjected," which appears to allege a claim for wrongful arrest and malicious prosecution. (See Compl. ¶¶ 110-15 ("Defendants caused the Plaintiff . . . to be subjected to including, but not limited to: unlawful stop, unlawful detention, false arrest, . . . [and] wrongful criminal prosecution . . . .").)

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694.  It is likewise well established that, for the purpose of a Section 1983 claim, "a municipality cannot be held liable for the conduct of employees under a respondeat superior theory, i.e., simply by dint of the employer-employee relationship." Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014) (citing Monell, 436 U.S. at 691).

None of the remaining federal causes of action sufficiently alleges the City's liability under Monell, as they are silent as to any role played by the City in relation to Plaintiff's injuries.  Plaintiff's only mention of the municipal Defendants appears in Causes of Action Three and Four, where Plaintiff refers to the actions of "Defendants, their servants, [and] agents," which the Court construes liberally as an attempt to allege liability under a theory of respondeat superior.  (See Compl. ¶¶ 112-13, 115, 119-20, 122-23, 125-26.)  To the extent that Plaintiff alleges such vicarious liability, her claims are legally defective.  Because the Court has already determined that Plaintiff has failed to allege a custom, policy, or practice of the City giving rise to her injuries, and because Section 1983 liability based on a theory of respondeat superior is clearly proscribed by Monell and its progeny, there is no legal basis upon which Plaintiff's remaining federal causes of action may be maintained.  Thus, Causes of Action One through Four and Nine must be dismissed as against the City.

Plaintiff's State Law Claims

Plaintiff asserts various state-law claims against the City in her Complaint.[5]  For

---

[5]   Plaintiff's state law claims are set out in Causes of Action Ten through Twenty of the Complaint.  (Compl. ¶¶ 161-291.)  Causes of Action Sixteen and Seventeen

the following reasons, the Court dismisses these claims.

*Respondeat Superior Liability (Causes of Action Ten, Eleven, and Fifteen)*

Plaintiff alleges that the City is liable for the physical and emotional injuries arising from her interactions with Officer Becker, based on the doctrine of respondeat superior.[6] Under New York law, an employer is vicariously liable for the actions of an employee only where the acts in question are "committed in furtherance of the employer's business and within the scope of employment." N.X. v. Cabrini Med. Ctr., 765 N.E.2d 844, 847 (N.Y. 2002). "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." Adorno v. Correctional Servs. Corp., 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (quoting Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (internal quotation marks omitted) (collecting cases). For instance, where a doctor dressed in uniform sexually assaulted a patient at the hospital where he was employed, the New York Court of Appeals found the doctor's conduct to be outside the scope of his employment because "[a] sexual assault perpetrated by a hospital employee is not in furtherance of hospital business and is

---

    explicitly indicate that they are asserted "[a]gainst Defendant Carlos Becker" (id. ¶¶ 227, 257), and thus the Court need not address them in resolving the instant motion.

[6]     This claim is most explicitly set forth in Plaintiff's Eleventh Cause of Action, which specifically alleges that Defendants "are liable under the doctrine of respondeat superior for [the individual Defendants'] tortious actions," including both negligent conduct and infliction of emotional distress. (Compl. ¶¶ 176-86.) Plaintiff makes similar claims in Causes of Action Ten (id. ¶¶ 161-75) (recounting Plaintiff's injuries and asserting liability "under the doctrine of respondeat superior") and Fifteen (id. ¶¶ 216-26) (alleging "intentional and/or negligent infliction of emotional distress" for which Defendants are liable "pursuant to respondeat superior"). The Court deems the claims set forth in Causes of Action Ten and Fifteen duplicative of those set forth in Cause of Action Eleven, all of which will be dismissed for the reasons explained infra.

a clear departure from the scope of employment, having been committed for wholly personal motives." Cabrini Med. Ctr., 765 N.E.2d at 847. "Thus, New York courts have repeatedly found no vicarious liability for claims involving sexual misconduct, including sexual assault." Adorno, 312 F. Supp. 2d at 517.

Because Plaintiff's alleged injuries stem from the sexual assault by Officer Becker, and because New York courts have consistently held that sexually motivated conduct falls outside the scope of employment, Plaintiff fails to state a claim based on a respondeat superior theory of liability. Even though Plaintiff argues that some of her injuries are only indirectly related to the sexual assault – such as her unlawful detention and prosecution – Plaintiff pleads no facts suggesting that Becker's actions furthered his employment as an NYPD officer. Rather, Plaintiff alleges in her Complaint "[t]hat at all times herein mentioned, Defendant Becker's actions . . . violated Defendants['] . . . rules, regulations, codes, guidelines, practice, custom and/or policy about personal contact with a Defendant/arrestee and/or abuse of their power . . . for the Officer's personal gratification including, but not limited to: sexual gratification." (Compl. ¶ 99.) Thus, Plaintiff has failed to demonstrate that Becker's conduct fell within the scope of his employment. See Doe, No. 09CV9895-SAS at *5 n.62 (finding trespass and false imprisonment not within scope of police officer's employment where plaintiff did not allege the acts were "in furtherance of [defendants'] responsibilities as police officers," but rather "for the purpose of raping and sexually assaulting plaintiff" (emphasis in original)). Moreover, with respect to Plaintiff's claim of intentional infliction of emotional distress, "[i]t is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity." Lauer v. City of New York, 240 A.D.2d 543, 544 (N.Y. App. Div. 1997). Accordingly, Causes of Action Ten, Eleven, and Fifteen must be dismissed as

against the City.

> *Negligent Supervision, Retention, or Training (Causes of Action Twelve, Fourteen, and Eighteen)*

Plaintiff further alleges that the City is liable for her injuries under a failure to supervise, retain, or train theory grounded in New York state law.[7]  To state a claim for negligent supervision or retention, a plaintiff must show "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted).  With respect to the failure to train claim,  "a cause of action sounding in negligence is legally sustainable against a city when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer."  Barr v. Albany Cnty., 406 N.E.2d 481, 485 (N.Y. 1980).  To prevail on a state law failure to train claim, a plaintiff must set forth more than bare, conclusory allegations of a deficiency in training.  See Rodriguez v. City of New York, 649 F. Supp. 2d 301, 307-08 (S.D.N.Y. 2009) (finding that conclusory allegations insufficient to sustain a Section 1983 failure to train claim also "doom the

---

[7]  Plaintiff most explicitly sets out this claim in Cause of Action Fourteen, which alleges that "Defendants . . . had a duty to supervise, manage, oversee, maintain, control and/or train their employees" and that Defendants were "negligent in that they failed [in] their duty," thereby causing Plaintiff's injuries. (Compl. ¶¶ 207-15).  Nearly identical claims are set forth in Causes of Action Twelve (id. ¶¶ 187-200) (alleging that Defendant's failure to supervise individual Defendants resulted in Plaintiff's injuries) and Eighteen (id. ¶¶ 265-79) (alleging that Defendants' failure to "supervise, train, manage, [etc.] . . . caused injury to the Plaintiff").  The Court deems these Causes of Action duplicative of one another, and each will be dismissed for the reasons explained infra.

plaintiff's [parallel] state law claim for failure to train"); Hall v. City of White Plains, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (dismissing state law failure to train claim based on "nothing more than conclusory allegations").

Here, Plaintiff pleads no facts tending to show that the City knew or should have known of Officer Becker's alleged propensity to commit sexual assault or related wrongdoing and, as discussed in the context of Plaintiff's federal negligent hiring claim, Plaintiff has not pointed to any prior misconduct by Becker. Similarly, as discussed with respect to Plaintiff's federal failure to train claim, Plaintiff has not identified any deficiency in police training nor pleaded facts sufficient to connect such a deficiency to her injuries. Thus, Plaintiff's claims for negligent supervision, retention, or training pursuant to New York state law are deficient. For this reason, Causes of Action Twelve, Fourteen, and Eighteen must be dismissed as against the City.

*Failure to Intervene (Cause of Action Thirteen)*

Plaintiff's Thirteenth Cause of Action alleges that Defendants "by and through their agents, servants, licensees and/or employees, failed to intervene and/or prevent the aforementioned unlawful conduct inflicted against Plaintiff." (Compl. ¶¶ 201-06.) The Court reads this Cause of Action as an attempt to allege that Defendants breached their duty to protect Plaintiff. Establishing a municipality's duty to protect requires a plaintiff to show a "special relationship" with the municipality, one element of which is "knowledge on the part of the municipality's agents that inaction could lead to harm." See Damato v. City of New York, No. 06CV3030-DC, 2008 WL 2019122, at *3 (S.D.N.Y. May 12, 2008) (quoting Cuffy v. City of New York, 505 N.E.2d 937, 940 (N.Y. 1987)) (collecting cases regarding municipalities' duty to protect through police); cf. Cabrini Med. Ctr., 765 N.E.2d at 849 (requiring knowledge for duty-

to-protect claim against hospital and finding valid claim where nurses allegedly "observed or unreasonably ignored" doctor misconduct). Because Plaintiff has pleaded no facts indicating that the City had any knowledge of Becker's alleged misconduct, she has not demonstrated that the City knew that it had a duty to act, or that its failure to do so would lead to harm. Therefore, Plaintiff's Thirteenth Cause of Action must be dismissed.

*Violation of the New York State Constitution (Cause of Action Nineteen)*

Plaintiff also claims that Defendants violated her right to be free of unreasonable searches and seizures pursuant to Article One, Section Twelve of the New York State Constitution. (Compl. ¶¶ 280-85); see N.Y. CONST. art. I, § 12 (McKinney 2002). Neither party has explicitly addressed this allegation in its moving papers. Nonetheless, to the extent that Plaintiff attempts to state such a claim in her Complaint, it must fail on the merits.

The New York Court of Appeals has recognized that a plaintiff may bring a constitutional tort claim for damages independent of any common law cause of action. Brown v. State, 674 N.E.2d 1129, 1137-41 (N.Y. 1996). That court has specified that a municipality's vicarious liability for constitutional torts extends to "officers or employees acting in the course of their employment." Id. at 1142. To succeed on a claim based on a constitutional tort, "[c]laimants must establish grounds that entitle them to a damages remedy, in addition to proving that their constitutional rights have been violated." Martinez v. City of Schenectady, 761 N.E.2d 560, 563 (N.Y. 2001). Moreover, a plaintiff must show that a damages remedy is "'necessary to effectuate the purposes of the State constitutional protections [that the] Plaintiff invokes' or 'appropriate to ensure full realization of [the plaintiff's] rights.'" Biswas v. City of New York, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (quoting Martinez, 761 N.E.2d at 563).

Where a plaintiff has alternate remedies available both at common law and under

a federal statute such as Section 1983, "her state constitutional tort claim is [considered] redundant and precluded." See Biswas, 973 F. Supp. 2d at 522 (dismissing constitutional tort claim for violation of Article One, Section Twelve of the New York State Constitution where plaintiff could also proceed with either common law false arrest and false imprisonment claim or Section 1983 claim); see also Hershey v. Goldstein, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (dismissing constitutional tort claim alleging multiple violations of New York State Constitution where plaintiff failed to "allege specific facts to support [his] assertions" and "the claims duplicate[d] his other claims"). This holds true even where the only valid alternate claim is against an individual defendant. See Waxter v. State, 33 A.D.3d 1180, 1182 (N.Y. App. Div. 2006) (barring constitutional tort against State of New York where adequate remedy available against offending officer at common law, regardless of difference in potential monetary recovery).

    Plaintiff fails to plead specific facts with regard to the City's involvement in the alleged deprivation of her constitutional rights, and she has alternate remedies potentially available both at common law and under a federal statute, which include Section 1983 claims against the individual defendants. Furthermore, as explained above, the sexually motivated actions of Officer Becker were not taken in the course of his employment as an NYPD Officer, which take his actions outside the bounds of the City's potential vicarious liability under a theory of respondeat superior. Accordingly, Cause of Action Nineteen must be dismissed as against the City.

    *Punitive Damages (Cause of Action Twenty)*

    Plaintiff further asserts that she is entitled to a punitive damages award. (Compl. ¶¶ 286-91.) However, Plaintiff has no viable state-law claims remaining against the City.

Because a claim for punitive damages is not a separate, stand-alone cause of action under New York Law, Plaintiff's Twentieth Cause of Action must be dismissed as against the City. See, e.g., Ehrlich v. Inc. Vill. of Sea Cliff, 95 A.D.3d 1068, 1070 (N.Y. App. Div. 2012) ("New York law does not recognize a separate cause of action for punitive damages") (citing Rocanova v. Equitable Life Assurance Soc'y of U.S., 634 N.E.2d 940, 945-46 (N.Y. 1994)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in its entirety. All claims alleged against the City of New York and the New York Police Department are dismissed. Plaintiff's request for leave to amend her Complaint is denied, as she declined opportunities to do so in lieu of opposing this motion, and she was on notice that no further leave to amend as to issues raised in this motion would be granted. (See Individual Practices Rules of the Undersigned, available at www.nysd.uscourts.gov.) The Clerk of Court is respectfully requested to terminate both the City and the NYPD as Defendants in this action.

The initial pre-trial conference in this case is scheduled to be held on **August 7, 2017, at 12:30 p.m.**

This Memorandum Opinion and Order resolves docket entry number 8.

SO ORDERED.

Dated: New York, New York
June 26, 2015

  /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge